UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MUSA FINANCIAL LLC doing business as MORTGAGES USA; formerly known as J&M MORTGAGE BROKERS, LTD., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 1:17-cv-00033-JMS-DKL |
| MERCHANTS BANK OF INDIANA, P/R MORTGAGE AND INVESTMENT CORPORATION doing business as PR MORTGAGE & INVESTMENTS, and MICHAEL F. PETRIE, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

This case involves a series of interrelated contractual relationships among and between the parties spanning more than five years. The complex facts of the case largely arise out of transactions in which mortgage loans are originated, closed, and sold to other entities.

Presently pending before this Court are three motions – (1) a Motion for Judgment on the Pleadings filed by Plaintiff MUSA Financial LLC ("MUSA"), [Filing No. 26]; (2) a Motion for Leave to File an Amended Answer and Affirmative Defenses filed by Defendants Merchants Bank of Indiana ("Merchants"), P/R Mortgage and Investment Corporation ("P/R Mortgage"), and Michael Petrie, [Filing No. 39]; and (3) a Motion to Stay, also filed by Defendants, [Filing No. 42].

I.
STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is

subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Gill v. City of Milwaukee,* *850 F.3d 335, 339 (7th Cir. 2017)* (citing *Buchanan-Moore v. City of Milwaukee*, 570 F.3d 824, *827 (7th Cir. 2009)*. In considering a motion for judgment on the pleadings, courts "are confined to the matters presented in the pleadings" and must consider those pleadings in the light most favorable to the non-moving party. *Unite Here Local 1 v. Hyatt Corp.*, 2017 WL 2874805, at *5 (7th Cir. July 6, 2017)* (citing *Nat'l Fid. Life Ins. Co. v. Karaganis*, 811 F. 2d 357, 358 (7th Cir. 1987)). When the plaintiff moves for judgment on the pleadings, "the motion should not be granted unless it appears beyond doubt that the non-moving party cannot prove facts sufficient to support his position." *Hous. Auth. Risk Retention Grp., Inc. v. Chicago Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004) (citation omitted).

## II.
### BACKGROUND

Plaintiff MUSA is a mortgage lender that originates and closes mortgage loans for the purpose of selling such loans to other parties. [Filing No. 1 at 3.] From May 2011 to February 2015, MUSA was owned by two members, each of whom had a 50 percent stake in the company – Jeff Morgan and Bernard Malone. [Filing No. 1 at 3; Filing No. 1 at 5.]

Merchants is a banking corporation that entered into a series of loan transactions and contracts with MUSA, beginning in May 2011. [Filing No. 1 at 2-3.] P/R Mortgage is a corporation that "sometimes competes with MUSA for the generation and sale of loans on multifamily properties." [Filing No. 1 at 2.] Michael Petrie is both the Chairman and CEO of Merchants and the President of P/R Mortgage. [Filing No. 1 at 3.]

On June 20, 2011, Merchants extended a $3 million line of credit to MUSA. [Filing No. 1 at 4.] In 2013, Merchants extended a second line of credit to MUSA, which was raised to $800,000 (collectively, with the 2011 line of credit, the "MUSA Lines of Credit"). [Filing No. 1 at 5.]

Merchants and MUSA also entered into two Participation and Servicing Agreements, (the "Participation Agreements"), in 2011 and 2012, respectively. [Filing No. 1 at 4.]

In 2015, Mr. Malone passed away, leaving Mr. Morgan as the sole member of MUSA. [Filing No. 1 at 2; Filing No. 1 at 5.] Prior to his death, Merchants extended an approximately $1.5 million line of credit to Mr. Malone, (the "Malone Line of Credit"), which was, in part, secured by two life insurance policies. [Filing No. 1 at 4.]

Shortly after Mr. Malone's death, MUSA originated and closed on a multi-family loan in the amount of $36 million, which MUSA then sold to P/R Mortgage on May 1, 2015. [Filing No. 1 at 5.] Pursuant to the terms of the related loan purchase agreement, P/R Mortgage was periodically required to remit payments to MUSA, and did so for the first few months after entering into the agreement. [Filing No. 1-1 at 3; Filing No. 20 at 4.]

In December 2015, MUSA originated and closed a loan in excess of $17 million, which it then sold to a company other than P/R Mortgage. [Filing No. 1 at 7-8.]

In February 2016, the two MUSA Lines of Credit matured and Merchants refused to extend them. [Filing No. 1 at 8.] Shortly thereafter, Merchants demanded that MUSA pay all amounts due on the MUSA Lines of Credit and the Participation Agreements. [Filing No. 1 at 9.]

MUSA alleges that the following month, P/R Mortgage failed to render payment to MUSA, as required by the May 2015 loan purchase agreement, and has failed to pay MUSA since that time. [Filing No. 1 at 9.] Defendants, in turn, maintain that P/R Mortgage "remitted the referenced [payments] on MUSA's behalf and for MUSA's benefit to pay down MUSA's other contractual obligations" to P/R Mortgage. [Filing No. 20 at 5.]

On April 25, 2016, Merchants filed a lawsuit against MUSA, Mr. Morgan, and Mr. Malone's widow in the Dallas County, Texas Probate Court, (the "Texas Case"), seeking "to

recover amounts owed by MUSA under the Malone Line of Credit." [Filing No. 1 at 11; Filing No. 20 at 7.]

On December 28, 2016, Merchants assigned its interest in the MUSA Lines of Credit and Participation Agreements to P/R Mortgage. [Filing No. 1-2 at 2.] The next day, P/R Mortgage notified MUSA that it had "exercised its right to set-off $857,284.47 of the [payment] owed to MUSA by P/R [Mortgage] . . . against the indebtedness owed by MUSA to P/R [Mortgage]" in accordance with the newly assigned interests. [Filing No. 1-2 at 3.]

On January 5, 2017, MUSA filed the instant suit alleging four counts: (1) breach of contract against P/R Mortgage; (2) tortious interference with contact against Merchants and Mr. Petrie; (3) conversion against Merchants and Mr. Petrie; and (4) conspiracy against Merchants and P/R Mortgage. [Filing No. 1 at 14-18.]

The Court will address each of the three ripe Motions, beginning first with Defendants' Motion for Leave to File an Amended Answer and Affirmative Defenses, [Filing No. 39], followed by MUSA's Motion for Judgment on the Pleadings, [Filing No. 26], and finally, Defendants' Motion to Stay, [Filing No. 43].

### III.
### DISCUSSION

**A. Defendants' Motion for Leave to Amend Answer and Affirmative Defenses**

Merchants, P/R Mortgage, and Mr. Petrie seek to amend their answer and affirmative defenses, arguing that since they filed their original answer and affirmative defenses "the relationship of the parties has changed," which renders inaccurate some of the Defendants' original answer. [Filing No. 39 at 2-3.] Specifically, Defendants state that on April 10, 2017, Merchants assigned P/R Mortgage its interests in the Malone Line of Credit and a liquidation agreement. [Filing No. 39 at 2.] Shortly thereafter, P/R Mortgage was substituted for Merchants as the party

plaintiff in the Texas Case. [Filing No. 39 at 3.] The Defendants also state that they seek to amend their affirmative defenses to clarify that they contend that MUSA owes P/R Mortgage money under the Malone Line of Credit. [Filing No. 39 at 3.] In support of their Motion, Defendants argue that there will be no prejudice to MUSA if the requested leave is granted and that their Motion was filed within the deadline for amending the pleadings. [Filing No. 39 at 4.]

In response, MUSA states that it "does not oppose the Defendants' Motion to Amend." [Filing No. 44 at 3.] However, MUSA argues that the Court should not allow Defendants' motion to moot MUSA's previously filed Motion for Judgment on the Pleadings. [Filing No. 44 at 4.]

Defendants did not file a reply.

A party may amend its pleading with the opposing party's written consent or the court's leave, which the court should freely give "when justice so requires." Fed. R. Civ. P. 15(a)(2). "As a general rule, district courts should liberally grant leave to amend pleadings." *Mulvania v. Sheriff of Rock Island City*, 850 F.3d 849, 854 (7th Cir. 2017) (citations omitted). Given that MUSA does not oppose the Motion to Amend, the Court holds that the requirements of Rule 15(a)(2) are satisfied. Accordingly, Defendants' Motion for Leave to Amend Answer and Affirmative Defenses, [Filing No. 39], is **GRANTED**. The Court finds that granting Defendants' Motion does not moot MUSA's Motion for Judgment on the Pleadings and will consider that Motion herein.

### B. MUSA's Motion for Judgment on the Pleadings as to Liability for Count I of the Complaint

MUSA contends that it is entitled to judgment on the pleadings for Count I of the Complaint because "Defendants' Answer admits facts that establish liability on MUSA's claim." [Filing No. 26 at 4.] Count I alleges that P/R Mortgage breached the May 2015 loan purchase agreement with MUSA. [Filing No. 1 at 14-15.] Specifically, MUSA argues that beginning in March 2016, P/R Mortgage failed to remit to MUSA the payments required under the loan purchase agreement.

[Filing No. 1 at 14.] Because of this breach, MUSA alleges that is has suffered "substantial damages." [Filing No. 1 at 15.]

In support of its Motion for Judgment on the Pleadings, MUSA points to numerous allegations that Defendants admitted were true in their Answer and argues that "accepting every admission, denial and other statement in the Defendants' Answer as true and viewing them in the light most favorable to [P/R] Mortgage, there can be no doubt that [P/R] Mortgage has admitted liability on MUSA's claim for breach of the Loan Purchase Agreement." [Filing No. 26 at 15.] First, MUSA states that P/R Mortgage admitted the existence of a contract in the form of the loan purchase agreement. [Filing No. 26 at 16 (citing Filing No. 20 at 3; Filing No. 20 at 8).] Second, MUSA alleges that P/R Mortgage admitted that it did not remit payments to MUSA, thereby breaching the contract. [Filing No. 26 at 17 (citing Filing No. 20 at 5).] Finally, MUSA contends that P/R Mortgage admitted facts which establish damages as a result of the breach; however, MUSA notes that it "seeks judgment on the pleadings only on the issue of liability, not the amount of MUSA's damages." [Filing No. 26 at 17; Filing No. 26 at 21.]

In response, P/R Mortgage states that it "does not oppose the entry of judgment in MUSA's favor on the issue of liability of Count I of MUSA's Complaint." [Filing No. 36 at 1.] However, P/R Mortgage maintains that it has neither admitted nor conceded that MUSA has been damaged. [Filing No. 36 at 2.] Accordingly, P/R Mortgage states that the parties could not agree on language for a consent order. [Filing No. 36 at 1-2.]

In reply, MUSA maintains that it is entitled to judgment on liability for Count I of the Complaint and contends that P/R Mortgage "did not assert any legally sufficient defenses." [Filing No. 37 at 2.]

To recover for a breach of contract, MUSA must prove "that a contract existed, the defendant breached the contract, and [MUSA] suffered damage as a result of the defendant's breach." *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007) (citing *Breeding v. Kye's, Inc.,* 831 N.E.2d 188, 191 (Ind. Ct. App. 2005)). As both parties point out in their briefing, there is no dispute that a contract existed and that P/R Mortgage breached the contract. Additionally, both parties seem to agree that the issue of damages is not properly before the Court on a Motion for Judgment on the Pleadings, as Defendants have not conceded this issue. Therefore, MUSA's Motion for Judgment on the Pleadings as to the issue of liability for Count I of the Complaint, [Filing No. 26], is **GRANTED**.

## C. Defendants' Motion to Stay

Finally, the Court turns to Defendants' Motion to Stay. [Filing No. 42.] Defendants' Motion is premised on the *Colorado River* Doctrine, which they allege provides "federal courts with a framework for determining when to stay a federal action pending resolution of a parallel state court action." [Filing No. 43 at 3.] Defendants argue that the Texas Case is a "parallel state court action" to this case and that staying this case would "avoid piecemeal litigation and potentially inconsistent and inequitable results." [Filing No. 43 at 1.] Defendants list three reasons why the two cases are parallel: (1) "the parties substantially are the same;" (2) if P/R Mortgage prevails in the Texas Case, there is "substantial likelihood, if not a certainty" that the judgment will dispose of MUSA's claims in the present case because MUSA's damages will be offset by its liability to P/R Mortgage; and (3) both cases involve the same underlying legal issues and facts because P/R Mortgage's affirmative defense in this case is identical to its breach of contract claim in the Texas Case. [Filing No. 43 at 16-17.] Defendants ground their argument in the right of setoff, alleging that under Indiana law, P/R Mortgage was entitled to apply payments it owed

MUSA to offset debts that it alleges were owed by MUSA, which Defendants argue resolves each of MUSA's claims except for conversion. [Filing No. 43 at 10-12.] Defendants then analyze the case under the ten factors set forth in *Colorado River*, arguing that "eight of the ten factors weigh in favor of a stay, while the remaining two factors are inapplicable and neutral." [Filing No. 43 at 17-21.]

In response, MUSA argues that the claims at issue in this case and the Texas Case are not parallel because they "do not involve the same legal issues or the same evidence" and "are not in any way related or overlapping with each other except for the fact that they are between the same parties." [Filing No. 45 at 7.] With regard to *Colorado River* abstention, MUSA states that actions are only parallel "if the state action will resolve *all* of the issues in the federal action." [Filing No. 45 at 9] (emphasis in original). MUSA contends that regardless of whether P/R Mortgage is successful in the Texas Case, this Court will still have to resolve numerous issues, including the amount of damages MUSA suffered as a result of P/R Mortgage's breach of the loan purchase agreement, whether Merchants tortiously interfered with the loan purchase agreement, and whether Mr. Petrie and Merchants converted money out of MUSA's bank account. [Filing No. 45 at 23-24.] MUSA next argues that if the Court determines that the actions are parallel, this case does not present exceptional circumstances under the ten relevant factors such that *Colorado River* abstention should apply. [Filing No. 45 at 25.]

"Federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction conferred on them by Congress." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 517 (7th Cir. 2001) (quoting *Colorado River Water Cons. Dist. v. United States,* 424 U.S. 800, 817 (1976)). The *Colorado River* doctrine, however, "creates a narrow exception to that rule, allowing federal courts in some exceptional cases to defer to a concurrent state-court case as a matter of 'wise

judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 645 (7th Cir. 2011) (quoting *Colorado River*, 424 U.S. at 817).

To determine whether a stay under *Colorado River* is appropriate, "a district court must first evaluate whether the federal and state cases are parallel." *Huon*, 657 F.3d at 646 (citing *Adkins v. VIM Recycling, Inc.,* 644 F.3d 483, 498 (7th Cir. 2011)). Two suits are parallel when there is a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Adkins*, 644 F.3d at 499 (citation omitted). If there is any doubt that cases are parallel, a district court should not abstain. *Huon*, 657 F.3d at 646.

The Court holds that Defendants' *Colorado River* argument fails at the outset because the Texas Case is not parallel to the case pending before this Court. The Texas Case primarily seeks to establish that MUSA is liable for the Malone Line of Credit, a completely separate transaction both in kind and time. In contrast, three of the four counts in MUSA's complaint involve an unrelated loan purchase agreement, and the remaining count alleges conversion from MUSA's bank account. [Filing No. 1 at 14-18.] None of the four counts in MUSA's complaint involve the Malone Line of Credit. Accordingly, Defendants' argument that both cases involve the same underlying legal issues and facts is unavailing. Moreover, there is no substantial likelihood that the Texas Case will resolve all claims presented in this case. This is most strikingly apparent with regard to Count III of MUSA's complaint, which alleges conversion from MUSA's bank account – an issue wholly unrelated to the parties' contractual agreements and to the Malone Line of Credit. Defendants seem to acknowledge this fact in their own Motion, when they exclude the conversion claim from their arguments regarding the right to setoff. [Filing No. 43 at 10 (stating "[w]ith the exception of MUSA's conversion claim, all of MUSA's claims arise from P/R's decision to stop

remitting [payments] to MUSA. . .).]  Because the two cases are not parallel, the Court may not

stay this case under *Colorado River*.

Given that Defendants' *Colorado River* argument fails at the outset, the Court need not

analyze whether this case presents any of the exceptional circumstances set forth in that case or its

progeny.  However, the Court will briefly address two additional issues raised by Defendants in

their Motion to Stay.

First, the Court notes that Defendants premise many of their arguments in favor of

abstention on the common law right to setoff.  Yet, an examination of the law surrounding setoff

underscores why abstention is inappropriate in this case.  As this Court recently noted in *Aztec*

*Eng'g Grp., Inc. v. Liberty Mut. Ins. Co.*, 2017 WL 1382649, at \*11 (S.D. Ind. Apr. 18, 2017),

Indiana recognizes setoff as "the right that exists between two persons, each of whom under an

independent contract, express or implied, owes *an ascertained amount* to the other, to set off their

mutual debt by way of deduction." *Id*. (quoting *Benjamin v. Benjamin*, 849 N.E.2d 719, 725 (Ind.

Ct. App. 2006) (emphasis added)).  Here, even if setoff provided Defendants with a "fundamental

defense" to three counts of MUSA's claims, the amount that Defendants owe MUSA for those

three counts is not yet ascertained.  As such, regardless of the outcome of the Texas Case, it will

still remain for this Court to ascertain what, if any, liability Defendants owe MUSA under the

counts alleged in the complaint.

Second, the Court notes Defendants' argument that staying this case promotes wise judicial

administration and avoids piecemeal litigation.  [Filing No. 43 at 3.]  However, Defendants also

acknowledge that "[t]he parties cannot litigate their competing claims in a single forum because

the underlying contracts' forum selection clauses mandate that MUSA's claims be brought in

Indiana and [P/R Mortgage's] in Texas." [Filing No. 43 at 2.]  It is well settled that "federal courts

are friendly to the use of forum selection clauses." *IFC Credit Corp. v. Aliano Bros. Gen. Contractors*, 437 F.3d 606, 608 (7th Cir. 2006) (citing *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 33 (1988)).  Moreover, freedom of contract allowed the parties to enter into an agreement containing a forum selection clause, and it requires courts to enforce such a clause "unless it is subject to any of the sorts of infirmity, such as fraud and mistake, that justify a court's refusing to enforce a contract." *Id*. at 610 (citing *Nw. Nat. Ins. Co. v. Donovan*, 916 F.2d 372, 375 (7th Cir. 1990)).  Such is not the case here.  Concern about piecemeal litigation may be a factor that the parties consider when entering a contract, but it is insufficient to justify abstention under *Colorado River* where, as here, the two cases at issue are not parallel.  Accordingly, this Court must exercise jurisdiction, and Defendants' Motion to Stay, [Filing No. 42], is **DENIED**.

### IV.
#### CONCLUSION

For the reasons set forth herein, Defendants' Motion  for Leave to Amend Answer and Affirmative Defenses, [Filing No. 39], is **GRANTED**, MUSA's Motion for Judgment on the Pleadings as to the issue of liability for Count I of the Complaint, [Filing No. 26], is **GRANTED**, and Defendants' Motion to Stay, [Filing No. 42], is **DENIED**.


Date: 7/12/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana


**Distribution via ECF only to all counsel of record**